UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **MERRILL LYNCH, PIERCE, FENNER &** | * | |
| **SMITH INCORPORATED,** | * | |
| | * | |
| Plaintiff, | * | Civil Action No. 6:08-cv-00819 |
| | * | |
| versus | * | Judge Rebecca Doherty |
| | * | |
| | * | Magistrate Judge Mildred Methvin |
| **SUCCESSION OF MARY L. SCOTT, BUCK** | * | |
| **JONES SCOTT, and BRENDA BLAKE** | * | |
| **ORGERON,** | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO**
**BRENDA BLAKE ORGERON'S MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendant/Claimant, Edward G. Crumley, as the Executor for the Estate of Buck J. Scott ("Estate of Mr. Scott"), respectfully submits this memorandum in opposition to the Motion for Summary Judgment [Docket No. 19] filed by Brenda Blake Orgeron ("Orgeron").

The Estate of Mr. Scott has filed its own Motion for Summary Judgment [Docket No. 20] seeking a judgment (1) finding that Arkansas law should be applied to determine the ownership of the Merrill Lynch brokerage account at issue in this action and (2) awarding ownership of the account to the Estate of Mr. Scott. The facts and legal argument presented in that motion are incorporated herein. In addition, the Estate of Mr. Scott will briefly address a few of the factual assertions and legal arguments set forth in Orgeron's motion.

**I.      The Court should apply Arkansas law, not Louisiana law, to determine ownership of the account.**

An in-depth discussion of the reasoning for why Arkansas law must be applied is found in the Estate of Mr. Scott's Memorandum in Support of Motion for Summary Judgment [Docket No. 20-1, at pp. 5-7].

**II.     Under Arkansas law, a valid joint tenancy can be created with respect to a brokerage account unless evidence demonstrates a contrary intent by the parties.**

Orgeron cites the decision in *Hall v. Superior Federal Bank*, 794 S.W.2d 611 (Ark. 1990), to argue that Buck Scott did not take ownership of the Merrill Lynch account as the last surviving joint tenant. However, the facts in the present case are distinguishable from the facts in *Hall*, particularly with respect to the nature of evidence presented regarding the intent of the parties to the account.

The Arkansas Supreme Court briefly discussed the joint tenancy ownership regime under Arkansas law:

> Generally, assets held as "joint tenancy with right of survivorship" pass outside of probate.
>
> Property that was held by the decedent in joint tenancy with right of survivorship (or tenancy by the entireties) with a person who survives him is also not administered [in probate court], but passes directly to the surviving joint owner. However, the personal representative must, before deciding not to claim such property, be certain that the property in fact was so held.
>
> E. Brantley & W. Haught, Arkansas Probate, Sec. 6-5 (1984).

*Hall*, 794 S.W.2d at 613.

In *Hall,* the decedent, Dorothy Edwards, opened a Merrill Lynch brokerage account in 1973 which identified her niece, Virginia Hall, as a joint tenant with right of survivorship. However, Mrs. Hall admitted in a typed letter introduced into evidence and in her own testimony before the trial court that she was placed on the account to "get things out" for her aunt and to

distribute the money to Mrs. Edwards' heirs in the event of her death. *Hall, supra*, at 614. At trial, Mrs. Hall relied solely on Ark. Code Ann. § 23-32-1007, which provides that the opening of a checking or savings account with a bank is "conclusive evidence" of intent to create a valid joint tenancy with right of survivorship. The trial court found, and the Arkansas Supreme Court affirmed, that the statute at issue did not apply to a brokerage account not maintained by a bank, and thus found that the opening of the brokerage account was not "conclusive evidence" of Mrs. Edward's intent to leave an ownership interest in the account to Mrs. Hall at death. Because the only other evidence specifically contradicted any intent to create a true joint tenancy, the trial court concluded that the proceeds of the account could not be awarded to Mrs. Hall.

The *Hall* decision does not prevent any court from finding that the parties did in fact intend to create a valid joint tenancy for a brokerage account. Indeed, the Arkansas Supreme Court, in a case following *Hall*, confirmed a lower court ruling that a brokerage account was owned by the surviving joint tenant rather than the legatees in a decedent's will. *Gladson v. Gladson*, 800 S.W.2d 709 (Ark. 1990) (awarding ownership of a Dean Witter brokerage account to the surviving joint tenant despite the decedent's inclusion of the account in her will). The Arkansas Supreme Court found that any personal property could be subject to a joint tenancy:

> Consistent with the foregoing, the rule appears well settled that a devise by a joint tenant, who is survived by other joint tenants, is not effective to pass any title to the real estate in joint tenancy for the reason that the title passes by operation of law to the survivor or survivors. *In re Estate of Alpert,* 447 N.E.2d 796 (Ill. 1983) *First United Presbyterian Church v. Christenson,* 339 N.E.2d 15 (Ill. 1975); *see also* 4A R. Powell, *Real Property* p 619.1 (1982); 20 Am.Jur.2d Cotenancy and Joint Ownership § 3 (1965). Such a rule applies in full measure to personal property. *See Miller*, 243 Ark. 251, 419 S.W.2d 599. In sum, title to property held in joint tenancy takes precedence over the claim of a devisee, legatee or heir, as the case may be. *In re Estate of Alpert,* 447 N.E.2d at 798.
>
> As previously noted, Vickie was the sole surviving tenant of the survivorship accounts she held with her mother and father. As a consequence, Vickie acquired ownership to those funds by operation of law upon her mother's death. That

>   ownership could not be terminated by Mrs. Gladson's will and bequests of funds contained in those accounts to John. Therefore, we affirm the trial court's holding that Vickie owns both accounts free and clear of any claim John has asserted by virtue of their mother's will and specific bequests.

*Gladson,* S.W.2d at 710.

### III. Orgeron cannot sustain her burden of proof that the parties did not intend to create a valid joint tenancy with right of survivorship for the Merrill Lynch account.

Unfortunately, unlike in *Hall*, the two joint tenants who owned the Merrill Lynch account at issue in this case – Mary and Buck Scott – are both deceased. Therefore, the Court cannot receive the benefit of direct testimony from either of the co-owners regarding their intentions. In the absence of such testimony, Orgeron asks the Court to focus primarily on hearsay evidence from third parties, including Orgeron herself. The "evidence" presented by Orgeron is insufficient to invalidate the creation of a joint tenancy with right of survivorship for the Merrill Lynch account.

After Mr. and Mrs. Scott executed their antenuptial agreement prior to their marriage in 1991, Mrs. Scott clearly acted on at least two occasions to inform Merrill Lynch that Mr. Scott should be designated as a joint owner of the Merrill Lynch account. Although Merrill Lynch was unable to locate a copy of any documents executed at the time Mr. Scott was first added to the account as a joint tenant, the Client Relationship Agreement executed by both Mr. and Mrs. Scott in 2000 demonstrates a clear, unambiguous intent by both parties to continue ownership of the account via a joint tenancy with rights of survivorship whereby ownership of the account would be assumed by the surviving joint tenant in the event of either party's death.

The will executed by Mrs. Scott only 10 days before her death fails to specify an intention to grant ownership of the Merrill Lynch account or the stock held in the account to her legatees. While Orgeron submitted an unsigned affidavit of Inola Fairless regarding statements

that Mrs. Scott would "fix up" her will to ensure that the account proceeds were distributed to her legatees, the objective facts demonstrate that Mrs. Scott did not do so when she actually executed her will.

Orgeron argues that the antenuptial agreement, which was signed nine years before the Merrill Lynch account at issue was opened, precluded Mrs. Scott from sharing a co-ownership interest with Mr. Scott.  Several jurisdictions have found under the common law that when a spouse, after signing an antenuptial agreement, takes an action like opening a joint account that confers more benefits upon the other spouse than is otherwise provided for in the agreement, "the inference is great that [the spouse] intended these benefits to be above and beyond that which is given by the [antenuptial] agreement." *Walsh v. You*ng, 660 A.2d 1139 (N.H. 1995) (citing *In re Estate of Klein*, 239 A.2d 464, 468 (Pa. 1968)).  The antenuptial agreement alone cannot be used to disprove the intent of Mrs. Scott in light of the repeated actions creating and reinforcing the creation of a valid joint tenancy with right of survivorship. With regard to the other evidence presented, Orgeron executed a self-serving affidavit claiming that Mrs. Scott intended to add Orgeron rather than her husband, Mr. Scott, to the account as a joint tenant in 1991.  Orgeron contends that Mr. Scott was added only because Mrs. Scott did not have Orgeron's social security number.  Orgeron fails to explain why Mrs. Scott did not make any change to add Orgeron to the account in 17 years were that her true intent.

Orgeron further alleges that Mrs. Scott told her on some occasion that Mrs. Scott told her Buck Scott's name was on the account "for tax reasons only" on the advice of an unknown "accountant."  It is unclear what, if any, possible tax advantages could result from adding a joint owner to an account aside from allowing the account to automatically pass to the surviving joint tenant without passing through probate or being subjected to federal or state inheritance taxes.

Finally, Orgeron submitted affidavits from Leon Blake, Mrs. Scott's former brother-in-law, and his wife Barbara. Both affidavits state that Leon and Barbara Blake met with Buck Scott, his daughter, Barbara Crumley, and Edward Crumley, who all "acknowledged and agreed" that Buck Scott would relinquish his ownership interest in the account. However, Edward Crumley flatly disputes this contention, noting that Mr. Scott made no such acknowledgement and actually refused to have his name removed as a joint owner of the Merrill Lynch account. See affidavit of Edward Crumley attached as Exhibit A.

**IV.    Orgeron provided no proof that all cash and securities currently maintained in the Merrill Lynch account were owned by Mrs. Scott prior to the marriage.**

While Orgeron's motion discusses only Wal-Mart stocked owned by Mrs. Scott prior to her marriage, she has failed to prove or even allege that all cash and securities currently maintained in the Merrill Lynch account was Wal-Mart stock owned by Mrs. Scott. Accordingly, even if the Court is persuaded by Orgeron's argument that Mrs. Scott's estate is entitled to the stock she held prior to the marriage, it cannot award all funds currently held in the account to Orgeron without first requiring a proper accounting of the funds.

## CONCLUSION

Because the documentary evidence on its face demonstrates that Mary Scott and Buck Scott intended to assume co-ownership of the Merrill Lynch account as joint tenants with right of survivorship, and because Orgeron has failed to provide sufficient evidence of any contrary intent of Mrs. Scott, the Court should deny Orgeron's motion for summary judgment.

Respectfully submitted,

/s Gregory C. Fahrenholt

_____
GREGORY C. FAHRENHOLT (Bar No. 28572)
7739 Hampson Street
New Orleans, Louisiana 70118
(504) 451-9605
greg.fahrenholt@gmail.com
Attorney for Defendant/Claimant, Edward G. Crumley, as the Executor of the Estate of Buck J. Scott

## CERTIFICATE OF SERVICE

Electronic service of the foregoing was accomplished via the ECF filing system to the following registered ECF users on October 1, 2009:

Larry E. Mobley
Attorney for Merrill Lynch, Pierce, Fenner & Smith Inc.

Bernard S. Johnson
Attorney for Brenda Blake Orgeron and the Succession of Mary L. Scott

/s Gregory C. Fahrenholt
_____